IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| GERALD B. WILSON<br>Institutional ID No. 02501358,<br><br>Plaintiff,<br><br>v.<br><br>TEXAS CIVIL COMMITMENT CENTER<br>FACILITY DIRECTOR,<br><br>Defendant. | § § § § § § § § § § § § § | CIVIL ACTION NO. 5:20-CV-267-H-BQ |

**REPORT AND RECOMMENDATION**

Before the Court is a document filed November 12, 2020, by pro se Plaintiff Gerald B. Wilson in which he asks the Court to issue a temporary restraining order (TRO) or preliminary injunction "TO CORRECT ONGOING VIOLATIONS OF CIVIL RIGHTS." Mot. 2, ECF No. 1. Wilson alleges that the Texas Civil Commitment Center (TCCC) has wrongfully and arbitrarily limited his recreation, visitation, law library time, and overall movement within the facility in light of the COVID-19 pandemic. *Id.* After considering Wilson's motion and applicable law, the Court recommends that the motion be **DENIED** without prejudice to Wilson's right to request injunctive relief in the future should circumstances change.[1]

## I. Legal Standard

"An injunction is an extraordinary remedy and should not issue except upon a clear showing of possible irreparable injury." *Lewis v. S.S. Baune*, 534 F.2d 1115, 1121 (5th Cir. 1976). When a plaintiff requests injunctive relief that would require the court to interfere with the

---

[1] Wilson has not consented to proceed before a magistrate judge. In accordance with 28 U.S.C. § 636(b), the undersigned enters this Report and Recommendation.

administration of a state civil commitment facility,[2] "appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief." *Rizzo v. Goode*, 423 U.S. 362, 379 (1976). In assessing whether injunctive relief serves the public interest, prison administrators must be afforded deference in the manner in which they operate the prison. *Bell v. Wolfish*, 441 U.S. 520, 547 (1979). An injunction "is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion." *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989) (quoting *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 997 (5th Cir. 1985)); *see Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985) (citing cases for support) (explaining that "[t]he decision to grant a preliminary injunction is to be treated as the exception rather than the rule").

To secure an injunction or TRO, a movant must demonstrate:

1. A substantial likelihood of success on the merits of his case;

2. A substantial threat of irreparable injury if the injunction is not granted;

3. The threatened injury to the movant outweighs any damage the injunction will cause the non-movant; and

4. The injunction will not have an adverse effect on the public interest.

---

[2] This standard applies directly to injunctions relating to official conduct in state prisons and county detention centers. The Court recognizes that civilly committed persons are not prisoners, and their rights may differ from those of prisoners. *See Bohannan v. Doe*, 527 F. App'x 283, 289–90 (5th Cir. 2013) (per curiam) (holding that the Prison Litigation Reform Act does not apply to civilly committed sex offenders because they "are not prisoners," in accord with other circuits); *In re Commitment of Fisher*, 164 S.W.3d 637, 653 (Tex. 2005) (emphasizing that civil commitment "is a civil matter"). Nevertheless, this Circuit and other courts have addressed civil rights lawsuits from civilly committed individuals within the same substantive framework as similar suits brought by prisoners. *See, e.g., Smith v. Hood*, 900 F.3d 180, 186 (5th Cir. 2018) (citing *Youngberg v. Romeo*, 457 U.S. 307, 316 (1982) for the proposition that due process rights that survive criminal incarceration "must also survive involuntary commitment"); *R.R. v. N.J. Dep't of Corrs.*, 962 A.2d 563, 568 (N.J. Super. Ct. App. Div. 2009) (upholding a visitation policy at a civil commitment center that was identical to the same policy at state prisons). This Court thus evaluates the likelihood of Wilson's success on the merits by applying the same substantive standards to his case as would apply in a similar case brought by a prisoner.

*Women's Med. Ctr. v. Bell*, 248 F.3d 411, 418–20 (5th Cir. 2001); *Hay v. Waldron*, 834 F.2d 481, 484 (5th Cir. 1987).

## II. Analysis

Initially, the Court observes that Wilson has not provided notice of his request for injunctive relief to the opposing parties. Under Rule 65, a preliminary injunction can only be issued after notice to the adverse party. *See* Fed. R. Civ. P. 65(a)(1). Wilson has not shown that he has given notice to the persons subject to his request for injunctive relief. For this reason alone, his motion should be denied.[3]

More importantly, Wilson has not carried his burden with respect to any of the necessary criteria, including demonstrating a substantial likelihood of success on the merits of his § 1983 case or a substantial threat of irreparable injury, if the Court does not grant relief. Wilson's Complaint raises an access to courts claim and alleges a due process violation. Compl. 11, ECF No. 8. In the motion's prayer for relief, Wilson seeks a court order requiring the TCCC to stop its safety precautions and release him from confinement in his room "for twenty-three hours and fifty minutes a day," which he asserts denies him "effective access to the Courts, . . . any outside fresh air/sunshine and recreation . . . and any progressing treatment." Mot. 4–5. He alleges that the TCCC has arbitrarily limited his freedoms in this manner since October 14, 2020. *Id.* at 3.

Generally, a civil commitment scheme may not subject a committed person to punitive treatment—i.e., conditions that impose punishment. *See Kansas v. Hendricks*, 521 U.S. 346, 363–65 (1997). Indeed, a civilly committed person is entitled to "more considerate treatment and

---

[3] Under Fed. R. Civ. P. 65(b)(1), the Court may issue a TRO without notice to the adverse party, but only where: (1) "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition"; and (2) the movant "certifies in writing any effort made to give notice and the reasons why it should not be required." Wilson has not satisfied either element.

3

conditions of confinement" than a prison inmate. *Youngberg v. Romeo*, 457 U.S. 307, 322 (1982). The prohibition on punitive treatment, however, does not mean that institutional officials cannot restrict Wilson's freedom. *See Senty-Haugen v. Goodno*, 462 F.3d 876, 886 (8th Cir. 2006) (citing *Wilkinson v. Austin*, 545 U.S. 209, 224–26 (2005) and *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)) (observing that because SVPs are "civilly committed to state custody," their "liberty interests are considerably less than those held by members of free society). Where an official's decision "is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment," the official may be liable for a constitutional deprivation. *Youngberg*, 457 U.S. at 323.

In this case, Wilson has not asserted any facts showing how his living conditions constitute "a substantial departure from accepted professional judgment." *See id.* This is particularly true in light of the ongoing health crisis. *See Umarbaev v. Moore*, No. 3:20-CV-1279-B-BN, 2020 WL 3051448, at *7 (N.D. Tex. June 6, 2020) ("Petitioners have not shown that the Respondents' response to the pandemic is, objectively speaking, 'not rationally related to a legitimate governmental objective.'" (citation omitted)); *Maney v. Brown*, Case No. 6:20-cv-00570-SB, 2020 WL 2839423, at *13 (D. Or. June 1, 2020) (denying a plaintiff's preliminary injunction request in part because "Defendants have responded reasonably to the serious risks posed by the COVID-19 pandemic, and Plaintiffs are therefore unlikely to succeed in demonstrating that Defendants acted with deliberate indifference" (citations omitted)). The ongoing COVID-19 pandemic is undoubtedly a serious health concern. To date, the virus has killed at least 311,684 Americans,[4] and as other courts have similarly observed, this disease—with no known cure or widely available

---

[4] *Graphic: Coronavirus deaths in the U.S., per day*, NBC NEWS, https://www.nbcnews.com/health/health-news/coronavirus-deaths-united-states-each-day-2020-n1177936 (last visited Dec. 18, 2020).

vaccine—is dangerous and unprecedented. *See, e.g., In re Abbott*, 954 F.3d 772, 779 (5th Cir. 2020); *Valentine v. Collier*, 956 F.3d 797, 799 (5th Cir. 2020); *Ojuma v. Barr*, No. 1:20-CV-00241-H, 2020 WL 6867055, at *1 (N.D. Tex. Nov. 20, 2020); *Sanchez v. Brown*, CIVIL ACTION NO. 3:20-CV-00832-E, 2020 WL 2615931, at *1 (N.D. Tex. May 22, 2020). Accordingly, where Wilson challenges the TCCC's emergency health restrictions, he has not established a likelihood of success on the merits based on a condition of confinement claim.

Neither has Wilson has shown that (1) he is at risk of suffering irreparable harm, (2) the threatened injury he faces outweighs any damages the injunction will cause, or (3) the injunction will not have an adverse effect on the public interest. *See Russell v. Harris Cty., Texas*, 454 F. Supp. 3d 624, 638 (S.D. Tex. 2020) (denying TRO with regard to claim that pretrial detainees are denied an adequate opportunity to challenge detention due to COVID-19 pandemic because even assuming the plaintiffs established the first three factors, they did not show that it was in the public's interest to grant relief); *Wolfford v. Baten ISF/Jordan Unit*, 2:20-CV-094-Z-BR, 2020 WL 3493548, at *4 (N.D. Tex. June 1, 2020) (denying preliminary injunction for more protective COVID-19 measures because prisoner failed to establish any of the four necessary requirements for injunctive relief), *R. & R. adopted by* 2020 WL 3491715 (N.D. Tex. June 26, 2020). Indeed, the health restrictions are undoubtedly intended to protect Wilson and other TCCC residents.

To the extent Wilson asks the Court to direct Defendants to provide him time in the law library, he has not demonstrated a likelihood of success or that he is suffering irreparable harm. In his motion, Wilson argues that "the lack of any access to the Law Library or any active assistance from MTC Staff has wholly denied Residents their protected rights to reasonable, meaningful access to the Courts." Mot. 3. He then complains that he is not "afforded any provisions to photocopy/duplicate papers" nor is he "afforded any provision to notary services" which he

believes constitutes denial of "effective access to Courts." *Id.* To prevail on an access to courts claim, Wilson must show that TCCC officials denied him access to the courts *and* that such a deprivation prejudiced him. *See Bohannan v. Griffin*, NO. 4:11-CV-299-A, 2016 WL 3647625, at *13 (N.D. Tex. June 30, 2016) (citing *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996)). That is, Wilson must plead facts demonstrating "an actual injury arising from this purported denial." *Day v. Seiler*, 560 F. App'x 316, 319 (5th Cir. 2014) (citing *Lewis v. Casey*, 518 U.S. 343, 356 (1996)). As evidenced by Wilson's pleadings, he has not demonstrated at this juncture that the lack of access to the law library during a global pandemic is causing him any harm—e.g., that he has been unable to present his various claims or defenses.[5]

As to Wilson's second request for relief—that the Court require Defendants to "stop . . . denying all Residents any outside fresh air/sunshine and recreation and denying Residents progressing treatment" (Mot. 5)—the Court observes that, since the filing of his motion, Wilson admits Defendants have allowed TCCC residents "normal outside recreation, Dayroom times and resumed regular treatment groups." Compl. 10. Consequently, this request is moot.

Accordingly, Wilson has not carried his burden with respect to any of the necessary criteria to obtain extraordinary injunctive relief and his motion should therefore be denied. *See Barbosa v. Barr*, No. 1:20-CV-00248-H, 2020 WL 7040091, at *6 (N.D. Tex. Nov. 24, 2020) (denying civil detainee's emergency motion for TRO because he failed to show a likelihood of success on his due process claim during COVID-19 pandemic); *Ehimare v. Barr*, No. 1:20-CV-00228-H, 2020 WL 6578415, at *5 (N.D. Tex. Nov. 6, 2020) (denying immigration detainee's emergency motion for TRO and noting that plaintiff's COVID-19 conditions of confinement did not amount to punishment); *Wolfford*, 2020 WL 3493548, at *4.

---

[5] The Court further notes that Wilson's motion for TRO was created using a word processor. The Court can only conclude that he therefore has some access to a word-processing device.

6

### III. Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Court **DENY** Wilson's request for injunctive relief (ECF No. 1).

### IV. Right to Object

A copy of this Report and Recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this Report and Recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2016); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's Report and Recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: December 22, 2020

_____
D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE