IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| GERALD B. WILSON<br>Institutional ID No. 02501358,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>TEXAS CIVIL COMMITMENT CENTER<br>FACILITY DIRECTOR,<br><br>　　　　　Defendant. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 5:20-CV-267-H-BQ |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Proceeding pro se and *in forma pauperis*, Plaintiff Gerald B. Wilson filed this civil rights action under 42 U.S.C. § 1983 alleging violations of his constitutional rights while confined at the Texas Civil Commitment Center (TCCC). Am. Compl. 1–11, ECF No. 8.[1] Wilson seeks declaratory and injunctive relief, as well as recovery of his court costs. *Id.* at 11–12.

Wilson filed his Complaint on November 12, 2020, followed by a de facto Amended Complaint on December 14, 2020. ECF Nos. 1, 8. Under Special Order No. 3-251, this case was automatically referred to the undersigned United States Magistrate Judge for further proceedings. Subsequently, the undersigned reviewed Wilson's Amended Complaint, along with authenticated records provided by the TCCC and Texas Civil Commitment Office (TCCO), and ordered Wilson to complete a questionnaire pursuant to *Watson v. Ault*, 525 F.2d 886, 892–93 (5th Cir. 1976), which he completed and returned. ECF Nos. 18, 19.

---

[1] Citations to Wilson's pleadings refer to the electronic page number assigned by the Court's electronic filing system.

After considering Wilson's allegations in the Amended Complaint, responses to the Court's questionnaire, authenticated records provided by the TCCC and TCCO, and applicable law, the undersigned makes the following findings, conclusions, and recommendations to the United States District Judge.

### I.   Standard of Review

Section 1915(e) requires dismissal of a complaint filed *in forma pauperis* (IFP) at any time if the court determines the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.[2] 28 U.S.C. § 1915(e)(2)(B)(i)–(iii); *see Newsome v. E.E.O.C.*, 301 F.3d 227, 231–33 (5th Cir. 2002) (affirming dismissal of pro se, non-prisoner plaintiff's claims as frivolous and for failure to state a claim under § 1915(e)(2)(B)(i) and (ii)). A frivolous complaint lacks any arguable basis, either in fact or in law, for the wrong alleged. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint has no arguable basis in fact if it rests upon clearly baseless factual contentions, and similarly lacks an arguable basis in law if it embraces indisputably meritless legal theories. *See id.* at 327. When analyzing a pro se plaintiff's complaint, the court may consider reliable evidence such as the plaintiff's allegations, responses to a questionnaire, and authenticated records. *See Wilson v. Barrientos*, 926 F.2d 480, 483–84 (5th Cir. 1991); *see also Berry v. Brady*, 192 F.3d 504, 507 (5th Cir. 1999) (noting responses given to a questionnaire are incorporated into the plaintiff's pleadings); *Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995) (holding that courts may dismiss prisoners' in forma pauperis claims as frivolous based on "medical and other prison records if they are adequately identified or authenticated" (internal quotation marks omitted)).

---

[2] Wilson is housed at the TCCC under an order and judgment of civil confinement as a sexually violent predator (SVP). Thus, he is not a "prisoner" within the meaning of 28 U.S.C. § 1915(h) and is not subject to the screening provisions of the Prison Litigation Reform Act. Because Wilson sought and was granted leave to proceed IFP, however, he is nevertheless subject to the screening provisions of 28 U.S.C. § 1915(e)(2).

In evaluating the sufficiency of a complaint, courts accept well-pleaded factual allegations as true, but do not credit conclusory allegations or assertions that merely restate the legal elements of a claim. *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 469 (5th Cir. 2016). And while courts hold pro se plaintiffs to a more lenient standard than lawyers when analyzing complaints, such plaintiffs must nevertheless plead factual allegations that raise the right to relief above a speculative level. *Id.* (citing *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378 (5th Cir. 2002)).

## II. Discussion

### A. Wilson's Claims.

Wilson asserts claims against a single Defendant: the director of the TCCC. Am. Compl. 1–2. He sues the Director in his individual and official capacities. *Id.* Wilson's Amended Complaint largely centers upon the TCCC's COVID-19 precautions and their purported impact on Wilson's access to courts. *Id.* at 1–12; Questionnaire 1, ECF No. 19. He takes issue with the center's lockdown and closure of the law library and alleges staff should have implemented measures to allow alternative access to the library despite safety measures imposed to protect residents during the pandemic. Am. Compl. 3; Questionnaire 1–2. He suggests, for example, that "TCCC staff still could [have] allowed [him] to traverse with an individual group of other like quarantined Residents from [his] same living area to the TCCC Law Library and back without any violations to the quarantine" or, "[a]t a minimum, TCCC could [have] created TCCC Law Library 'carts' to roll TCCC Law Library computers and printers around to the various living areas . . . ." Questionnaire 1–2.

Wilson avers that the "TCCC did not provide [him] any access [to] legal material, either directly or indirectly, after October 14, 2020[,] to December 18, 2020." *Id.* at 2. At that time,

according to Wilson, the library "minimally reopened" until December 27, after which the restrictions returned, and Wilson did not regain access the law library until January 15, 2021. *Id.*

In Wilson's view, the "TCCC knew, or should have known, the importance of continued access to courts during the COVID 19 restrictions." *Id.* As they specifically relate to Wilson, he claims the library restrictions prejudiced him by impacting two pending state court proceedings: (1) a state district court's review of Wilson's SVP civil commitment; and (2) an appellate court action where Wilson sought a writ of mandamus requiring the district court to allow him to represent himself.[3] Wilson contends that he has "been forced to file a pending Motion in the Trial Court to postpone all litigation," but "[t]here is no guarantee[] the" court will grant his motion. *Id.* "Due to the Trial Court's failure/refusal to respond to [his] Pro se Motions in this matter, [he] was forced to" file for a writ of mandamus, but due to the TCCC's health restrictions, he could not do so until March 2021. *Id.* Wilson explains that there "is not sufficient time for [him] to receive a response from the Court of Appeals on [his] Petition for a Writ of Mandamus" prior to his commitment review. *Id.* at 4. "If it had not been for the excessive TCCC Law Library restrictions . . . [he] would [have] had sufficient time to effectively litigate prior to" his commitment review. *Id.* "This is why," he claims, he "had to file a pending Motion to postpone all litigation" and he is "left without any effective ability to litigate before the Court in a timely manner." *Id.*

In addition, Wilson also believes that the TCCC does not generally provide meaningful access to the courts independent from the COVID-19 restrictions. *Id.* at 1. He complains that he is only permitted 3–4 hours per week in the law library, the law library assistant "is not trained in

---

[3] *See* Questionnaire 3–4; *see also In re Wilson*, NO. 09-21-00066-CV, 2021 WL 1567232, at *1 (Tex. App.—Beaumont Apr. 22, 2021, no pet.) (per curiam) (mem. op.). Wilson is represented in the district court by statutorily appointed counsel, and seeks mandamus to have the attorney removed so Wilson can proceed pro se in the commitment review proceeding. Questionnaire 2–4.

4

the law and has no legal experience," and he is "only afforded about one square foot of space while operating a computer." Compl. 4; Questionnaire 1.

### B. Wilson's access to courts claims should be dismissed.

Civil committees have a constitutional right of access to the courts.[4] *Bounds v. Smith*, 430 U.S. 817, 821 (1977); *Bohannan v. Doe*, 527 F. App'x 283, 298 (5th Cir. 2013) (per curiam). There is not, however, a "freestanding right" to access the courts. *Lewis v. Casey*, 518 U.S. 343, 351 (1996). Indeed, to prevail on an access to courts claim, a resident must demonstrate prejudice or harm by showing that his ability to pursue a "nonfrivolous," "arguable" legal claim was hindered by the defendants' actions. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Johnson v. Rodriguez*, 110 F.3d 299, 310–11 (5th Cir. 1997); *Bohannan v. Griffin*, NO. 4:11-CV-299-A, 2016 WL 3647625, at *13 (N.D. Tex. June 30, 2016) (citing *Eason v. Thaler*, 73 F.3d 1322, 1328 (5th Cir. 1996)). That is, Wilson must plead facts demonstrating "an actual injury arising from this purported denial." *Day*, 560 F. App'x at 319. It is important to note, however, that "[t]he 'injury requirement is not satisfied by just any type of frustrated legal claim.'" *Foreman v. Bowles*, No. 3:01-CV-2117-G, 2003 WL 21730136, at *3 (N.D. Tex. Mar. 31, 2003) (quoting *Lewis*, 518 U.S. at 353). Instead, Wilson "must demonstrate that the lack of access has prevented him from filing or caused him to lose a pending case that attacks either his conviction or seeks to vindicate basic constitutional rights in a civil rights action under . . . § 1983." *Id.* (internal quotation marks omitted).

---

[4] Although Wilson is not a prisoner, prisons and civil commitment institutions alike are obligated to provide their residents constitutionally adequate access to the courts. *See Welsh v. Correct Care Recovery Sols.*, No. 19-10825, 2021 WL 487152, at *5 (5th Cir. Feb. 9, 2021) (citing *Day v. Seiler*, 560 F. App'x 316, 318–19 (5th Cir. 2014) (per curiam)) ("We have previously applied *Lewis*[, 518 U.S. 343 (1996)] to an access-to-courts claim raised by a civilly committed SVP."). Thus, cases discussing prisoner access to courts claims are instructive to the Court's analysis.

5

"The central question in evaluating whether a law library adequately provides meaningful access to the courts is whether the facility will enable the [residents] to fairly present their complaints to a district court." *Cruz v. Hauck*, 627 F.2d 710, 720 (5th Cir. 1980). The Fifth Circuit has held that "[i]n the absence of some sort of direct legal assistance, which need not be by trained lawyers, the [residents] must be given access to a library as required in *Bounds*." *Morrow v. Harwell*, 768 F.2d 619, 623 (5th Cir. 1985). In *Mann v. Smith*, the court affirmed the dismissal of a prisoner's access to courts claim and noted that the plaintiff "himself proved in an irrefutable manner that he was able to file a legally sufficient complaint: by doing so." 796 F.2d 79, 83–84 (5th Cir. 1986). Simply stated, even if Wilson can show that his "right of judicial access [was] denied" due to inadequate access to legal material while confined, he must nevertheless demonstrate that "his access to the courts has been prejudiced." *Sun v. United States*, No. 94-10604, 1995 WL 103351, at *5 (5th Cir. Mar. 1, 1995) (unpublished); *accord Day*, 560 F. App'x at 319 (affirming district court's dismissal of SVP's access to courts claim where he did not allege the purported lack of access to courts caused him an actual injury).

      1. *Wilson does not allege facts suggesting he was unconstitutionally deprived of access to courts during the COVID-19 pandemic.*

Wilson contends that, due to COVID-19 restrictions, the TCCC deprived him of access to the law library for approximately two months and then again for three weeks. Questionnaire 2. In his view, this prejudiced his commitment review proceedings (where he is represented by counsel) because he filed for a writ of mandamus (seeking removal of counsel) later than he would have liked. *Id.* at 3.

Wilson's pleadings do not plausibly suggest that he suffered prejudice as a result of the COVID-19 lockdowns. First, Wilson's purported "harm" is entirely speculative: He claims if it were not for the restrictions, he would have filed for a writ of mandamus earlier, which in turn *may*

6

have allowed him to proceed pro se in his commitment review before the sex offender expert began Wilson's evaluation. *See id.* at 3–4. Thus, he contends, he was "forced" to file a motion to "postpone all litigation" and "[t]here is no guarantee[]" the state district court will grant his motion. *Id.* at 2. Accordingly, Wilson has not shown that he suffered an actual injury in relation to the state district court action.[5] *See Patterson v. Harris Cnty. Jail*, 358 F. App'x 491, 492 (5th Cir. 2009) (per curiam) (explaining that prisoner's failure to allege actual injury was "fatal to her denial of access to courts claim"); *Chriceol v. Phillips*, 169 F.3d 313, 317 (5th Cir. 1999) (noting that a delay in access to courts could give rise to a constitutional violation, but "to secure relief, [plaintiff] must demonstrate actual injury").

Concerning the mandamus proceeding, the appellate court denied Wilson's petition for writ of mandamus because his argument lacked legal merit—not because it was untimely filed or lacked legal citations. *See In re Wilson*, 2021 WL 1567232, at *1. As such, Wilson cannot show that he was prejudiced by the library lockdown. *See Lewis*, 518 U.S. at 351 (explaining that the actual injury requirement might include, "for example, that a complaint [prisoner] prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known," or that "he was unable even to file a complaint"); *Buckenburger v. Strain*, Civil Action No. 06-5670, 2006 WL 4503353, at *4 (E.D. La. Oct. 20, 2006) (recommending dismissal of prisoner's access to courts claim where although the court ultimately concluded that the case should be dismissed, such "fact stem[med] purely from

---

[5] Moreover, the Fifth Circuit has recognized that represented parties have "no constitutional right of access to a law library in preparing" their cases. *Caraballo v. Fed. Bureau of Prisons*, 124 F. App'x 284, 285 (5th Cir. 2005). While his motion seeks to remedy that perceived problem, Wilson nevertheless remains represented by counsel. And, even if Wilson is allowed to proceed pro se, "a prisoner who knowingly and voluntarily waives appointed representation by counsel in a . . . proceeding is not entitled to access to a law library." *Degrate v. Godwin*, 84 F.3d 768, 769 (5th Cir. 1996). Thus, for this additional reason, Wilson has not shown that his constitutional rights were violated.

the frivolity of his underlying claims, not from any limitations on his access to legal supplies and materials").

Finally, as to this proceeding, Wilson's pleadings include citations to relevant statutes and case law, which suggest that he was able to adequately prepare for the present case. *See Cook v. Painter*, No. 94-50036, 1994 WL 397725, at *2–3 (5th Cir. July 14, 1994) (unpublished) (noting that prisoner's filings included "an argument citing cases of which he was aware of the holdings" and concluding he was not therefore prejudiced by the denial of his law library requests); *Franklin v. Auths. of Tex. Dep't of Crim. Just., Institutional Div.*, No. Civ.A.5:04-CV-116-BG, 2005 WL 477991, at *4 (N.D. Tex. Feb. 24, 2005) (dismissing meaningful access to courts claim because plaintiff failed to show that he suffered an injury and plaintiff "did, in fact, present his claims to [the] court"). He likewise indicates that he was able to file multiple motions in his commitment review proceeding as well as a petition for writ of mandamus to a state appellate court. Questionnaire 3–4.

In sum, Wilson fails to state a claim based on the TCCC's emergency health restrictions. *See Edwards v. Lynaugh*, No. 94-20250, 1994 WL 684645, at *1 (5th Cir. Nov. 16, 1994) (unpublished) (affirming dismissal of claim where inmate was denied access to the prison law library for nine months because the denial "resulted in no disposition adverse to him in any lawsuit"); *Russie v. Davis*, 2:17-CV-225-Z-BR, 2020 WL 6550502, at *5 (N.D. Tex. Nov. 5, 2020) (dismissing at screening access to courts claim because the purported delay in filing his claim "did not result in missed deadlines or issues with the statute of limitations"); *Allen v. Winfield*, No. 3:04-CV-2504-B, 2006 WL 1674096, at *7–8 (N.D. Tex. June 12, 2006) (rejecting argument that inmate was "denied access to the library" because "[w]ithout a showing of an actual injury, plaintiffs lack standing to pursue claims of denial of access to courts"); *see also Allen v. Seiler*,

8

Civil Action No. 4:12–CV–414–Y, 2013 WL 357614, at *5 (N.D. Tex. Jan. 30, 2013) (dismissing SVP's claim that he lacked access to a law library, where SVP failed to allege "that he suffered any actual injury"), *aff'd*, 535 F. App'x 423 (5th Cir. 2013) (per curiam).

> 2. *The district judge should dismiss Wilson's claim alleging the TCCC deprives him of meaningful access to courts.*

Wilson secondarily alleges that the TCCC routinely provides inadequate access to the courts because he is only permitted 3–4 hours per week in the library,[6] the law library assistant "is not trained in the law and has no legal experience," and he is "only afforded about one square foot of space while operating a computer." Compl. 4; Questionnaire 1. He does not, however, ascribe any particular harm to the purported violations.

As set forth above, without an actual injury, Wilson's claim fails. *See McDonald v. Steward*, 132 F.3d 225, 230–31 (5th Cir. 1998) (citation omitted) (acknowledging that "before a prisoner may prevail on a claim that his constitutional right of access to the courts was violated, he must demonstrate 'that his position as a litigant was prejudiced by his denial of access to the courts'"); *see also Day*, 560 F. App'x at 319. Even assuming an actual injury, his complaints nevertheless suffer from a more fundamental defect—the Constitution does not require that institutions furnish (1) individuals trained to provide direct legal assistance, (2) a certain amount of workspace, or (3) a time allotment greater than what TCCC currently provides. *See Morrow*, 768 F.2d at 623 (recognizing that prisons are not required to provide "direct legal assistance . . . by trained lawyers"); *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999) ("It is clear that limiting [inmate's] access to the law library to five hours a week . . . does not violate his right of access to the court. All we need say is that we rely on Supreme Court precedent in *Bounds*, to hold

---

[6] Wilson admits that "in the past few weeks" (i.e., March 2021), his "access to the TCCC Law Library has increased to about four to five hours a week." Questionnaire 2.

9

that limiting [inmate's] access effectively to about twenty hours a month will surely pass constitutional muster."); *Kemppainen v. Texas*, No. 2:11–CV–0071, 2011 WL 2183282, at *1 (N.D. Tex. June 3, 2011) (dismissing inmate's access to courts claim where he alleged he had "no personal work space" in the law library because he did "not establish[] his rights . . . [had] been violated"). Accordingly, Wilson's access to courts claims against the TCCC Director should be dismissed.[7]

### III. Recommendation

For the foregoing reasons, the undersigned recommends that the United States District Court dismiss Wilson's Complaint and all claims therein with prejudice in accordance with 28 U.S.C. § 1915(e)(2)(B).

### IV. Right to Object

A copy of this findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1) (2017); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and

---

[7] In addition, where Wilson has failed to establish an underlying constitutional violation, he cannot obtain equitable relief against Defendant in his official capacity. *See Green Valley Special Util. Dist. v. City of Schertz*, 969 F.3d 460, 471 (5th Cir. 2020) (acknowledging that for a plaintiff to receive prospective relief against a state official in his official capacity, the plaintiff must show an ongoing violation of federal law). Accordingly, Wilson's claims against the Director in his official capacity similarly fail.

legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

Dated: May 11, 2021.

_____
D. GORDON BRYANT, JR.
UNITED STATES MAGISTRATE JUDGE